IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| NARCISO RIOS  #785406 | § | |
| v. | § | CIVIL ACTION NO. 5:04cv84 |
| OFFICER McBAIN, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Narciso Rios, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights.  This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

Rios complained that on June 17, 2004, around 3 p.m., he told Officers Randy McBain and Donald Gibson that he "had to see some rank" about being moved.  The officers both said okay, and took him to his cell.  Once in his cell, Rios says that he "jacked the cuffs," meaning that he refused to allow the officers to remove the handcuffs from him.  He says that the officers then "ran into his cell and started talking." They slammed him down on his bed and tried to take the cuffs, but saw that they couldn't, so McBain told Gibson to "put him to sleep."  He says that Gibson began to choke him and McBain was able to get one handcuff off, so Rios put his hands in front of him to stop the officers from taking the cuffs.  The officers then slammed him to the floor, while he was still being choked.

Rios says that he began to pass out and the officers were finally able to get the handcuffs off of him.  They then left his cell, leaving him bleeding with a cut finger.  He says that

he was not taken to the medical department until about four hours later. Rios also says that his shoulder still bothers him and that it hurts when he lays down.

The Magistrate Judge ordered the Defendants to answer the lawsuit, and the Defendants filed a motion for summary judgment. This motion points out that Rios conceded that the officers used force because Rios had "jacked the cuffs," and that Rios further said that he resisted the officers by pulling his hands in front of him to prevent them from removing the restraints.

The Defendants also contended that Rios failed to show that he had suffered more than a *de minimis* injury. Rios' medical records show that his finger required only simple first aid, and that he did not complain about his shoulder at all in the month following the incident.

Finally, the Defendants asserted that they are entitled to qualified immunity from claims for damages brought against them in their individual capacities, and to Eleventh Amendment immunity from claims brought against them in their official capacities.

On March 21, 2005, the Magistrate Judge issued a Report recommending that the motion for summary judgment be granted. The Magistrate Judge reviewed the standards applicable in summary judgment cases and then set out the undisputed facts, viewing these facts in the light most favorable to Rios. These undisputed facts show that Rios told McBain and Gibson that he wanted to see a ranking officer with regard to a cell move. The officers took him to his cell. There, Rios refused to allow the officers to remove the handcuffs. McBain and Gibson ran into his cell and "slammed" him down on the bed. They then tried to take the handcuffs off, but were unable to do so. McBain told Gibson to put Rios "to sleep" and Gibson began choking him. McBain was then able to remove one handcuffs, but Rios continued to resist, placing his hands in front of him so that the officers could not remove the handcuffs. Rios was thrown to the floor, with Gibson continuing to choke him. The officers were finally able to get the handcuffs off and left the cell, leaving Rios with a cut finger. Four hours later, he was finally taken to the medical department. Rios continues to experience pain in this shoulder.

The undisputed medical records show that on June 17, 2003, a nurse was called to the medical department where Rios alleged that he had been assaulted. Specifically, Rios complained of an injured left fourth finger and red areas on his neck, the inside of his left arm, and both sides of his back.

The nurse examined Rios and found that he had full range of motion in his finger and a slight swelling and abrasion on the lateral side of his finger approximately 1/2 inch in length. The nurse also found a 1/2 inch red area on the side of Rios' neck and a red area on the inside of his left arm. No abnormalities were noted in his back. She noted an alteration in comfort and told him to wash his hand with soap and water and keep it clean. No treatment was needed for the reddened areas.

The next day, Rios was seen by a nurse named Williams for a use of force physical. There were no findings of injuries. The next entry in the medical record is on July 15, almost a month later, and concerned Rios' eyeglasses. There are no other mentions of injuries stemming from the incident.

The Magistrate Judge thus concluded that the undisputed evidence of injuries showed that Rios was seen on the day of the incident with a slight swelling and abrasion on his finger, although he had full range of motion. He also had reddened areas on his neck and arm. The only treatment required was that he wash his hand with soap and water and keep it clean. Rios has not sought medical care for the pain in his shoulder or for any other injuries allegedly stemming from this incident.

The Magistrate Judge then reviewed the legal standards applicable to use of force cases, as set out by the Fifth Circuit in <u>Baldwin v. Stalder</u>, 137 F.3d 836, 839 (5th Cir. 1998) and <u>Hudson v. McMillian</u>, 962 F.2d 522, 523 (5th Cir. 1992). Under these standards, inmates raising allegations of excessive force must show that the force used was malicious and sadistic for the very purpose of causing harm rather than in a good faith effort to restore discipline. In addition, the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from

constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *See* Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992)

In accordance with this decision, the Fifth Circuit has identified five factors which should be considered in determining whether an unnecessary and wanton infliction of pain was done in violation of an inmate's right to be free from cruel and unusual punishment. These factors are: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. Hudson, 962 F.2d at 523; *accord,* Baldwin, 137 F.3d at 839.

In applying these standards to the undisputed facts of the lawsuit, the Magistrate Judge noted first that Rios had failed to show that he suffered any more than *de minimis* injuries. In Eighth Amendment cases involving claims of excessive use of force, the Fifth Circuit has expressly held that the claimant must show injuries that are more than *de minimis*, even if not "significant, serious, or more than minor." Gomez v. Chandler, 163 F.3d 921 (5th Cir. 1999); *accord*, Hudson v. McMillian, 503 U.S. at 7 ("The Eighth Amendment's prohibition of cruel and unusual punishment **necessarily excludes** from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind'") (emphasis added). *See also* Jackson v. Culbertson, 984 F.2d 699 (5th Cir. 1993).

The Magistrate Judge then considered other Fifth Circuit authority in reviewing the extent of the injury suffered in the present case. The Magistrate Judge looked first to Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997). In that case, the plaintiff suffered a sore, bruised ear which lasted for three days and did not require medical attention, an injury which was held to be *de minimis*.

Similarly, the Magistrate Judge said, the only injury suffered by Rios was slight swelling and abrasion to his finger, and some red marks on his neck and arm. The only treatment

required for these findings was that he keep his hand clean.  He has never sought medical care for his shoulder or any other injuries resulting from this incident.  Rios' injury is plainly *de minimis*.

By contrast, the Magistrate Judge said, the plaintiff in Gomez v. Chandler suffered cuts, scrapes, and contusions to the face, head, and body as a result of being knocked down, repeatedly punched in the face, and kicked in the head.  Medical treatment was required for these injuries.  Similarly, in Edwards v. Stewart, 37 Fed.Appx. 90 (5th Cir., May 10, 2002) (not published in the Federal Reporter), the plaintiff suffered cuts to his fingers and thumb, headaches, neck pain, and lacerations to the ear as a result of being sprayed with pepper spray, repeatedly hit with the gas canister, and then being kicked several times in the neck, head, and chest.  Medical treatment was required for these injuries as well.  The Fifth Circuit held that Edwards' injuries were more than de minimis.

In Young v. Saint, et al., slip op. no. 92-4280 (5th Cir., March 31, 1993) (unpublished), an inmate was hit on the hand with a metal spatula, resulting in two scratches requiring antibiotic ointment and a bandage, and a slight decrease in flexion and extension of the inmate's fingers; the Fifth Circuit held that this injury was de minimis and that the use of force was not repugnant to the conscience of mankind.  In Potts v. Hill, slip op. no. 98-50214 (5th Cir., May 25, 1999) (unpublished), a case remarkably similar to the present one, the inmate was hit in the mouth during an altercation with a guard, causing a non-bleeding cut and making his mouth too sore to wear dentures for three weeks; the Fifth Circuit held that this injury was *de minimis* and upheld a grant of summary judgment for the guard.  After reviewing these cases, the Magistrate Judge concluded that Rios' injury was plainly *de minimis* and that the first Hudson factor weighed against him.

Second, the Magistrate Judge determined that according to Rios' own complaint, the force was applied to him because he refused to give up the handcuffs, and indeed resisted the officers' efforts to get them from him.  Thus, the Magistrate Judge concluded that Rios' own actions created the need for the application of force, and so the second Hudson factor weighed against Rios.

Third, the Magistrate Judge said that Rios' allegations tended to indicate that the amount of force used may have been excessive to the need, given Rios' allegations that he was slammed onto the bed and then onto the floor and that he was choked. Nonetheless, the Magistrate Judge reasoned that the clearly *de minimis* nature of the injuries suffered by Rios tends to show that while the amount of force used may have been excessive to the need, it was not so excessive as to violate the Eighth Amendment. *See* Jackson, 984 F.2d at 699-700. Thus, the Magistrate Judge determined that the third Hudson factor is inconclusive, leaning toward Rios with regard to the excessiveness in relation to the need, but leaning against him with regard to the *de minimis* nature of the injuries resulting from this use of force.

Concerning the fourth factor, the Magistrate Judge stated that Rios posed a threat to institutional order and security because he was refusing to comply with regulations and was keeping the handcuffs rather than allowing the officers to remove them. As the Magistrate Judge said, Rios' complaint candidly concedes that he resisted the officers' efforts to retrieve the handcuffs from him; Rios stated that "I put my two hands in front of me to keep them from taking the cuffs." The Magistrate Judge observed that Rios cannot choose to disobey the rules until he gets his way. *See, e.g.*, Meadows v. Gibson, 855 F.Supp. 223, 225 (W.D. Tenn. 1994) (prisoners cannot pick and choose which prison rules to obey).

As to the fifth Hudson factor, the Magistrate Judge noted that as with the third factor, Rios alleged that the officers slammed him to the bed and the floor and choked him, which assertions tend to indicate that the officers were not concerned with tempering the severity of their response, but the fact that Rios suffered no more than *de minimis* injuries shows that the severity of the response was in fact tempered. Thus, the Magistrate Judge concluded that the fifth factor was inconclusive.

Furthermore, the Magistrate Judge said, the Supreme Court's decision in Hudson requires a showing that the force was used maliciously and sadistically for the very purpose of causing harm, rather than in a good faith effort to restore discipline. Hudson, 112 S.Ct. at 999;

6

Baldwin, 137 F.3d at 841.  In this case, the Magistrate Judge stated that Rios failed to show that the force was used upon him malicious and sadistically for the very purpose of causing harm, rather than in a good faith effort to restore the discipline breached by Rios' own conduct in refusing to return the handcuffs.  Rios conceded that he did refuse to return the cuffs and that he actively resisted the officers' efforts to retrieve them.  See Baldwin v. Stalder, 137 F.3d at 838; Buchanan v. U.S., 915 F.2d 969, 971 (5th Cir. 1990) (noting that prison officials must "act swiftly" and "make difficult minute-to-minute decisions").  Having chosen as he did to keep the handcuffs and resist the officers' efforts to retrieve them, the Magistrate Judge said, Rios set the stage for the use of force.  Consequently, the Magistrate Judge recommended that Rios' lawsuit be dismissed.

The Magistrate Judge also considered the issue of qualified immunity, asserted by the Defendants in their motion for summary judgment.  The Magistrate Judge accurately set out the law governing claims of qualified immunity and concluded that the undisputed facts, including Rios' own complaint as well as the uncontroverted medical records, showed that Officers McBain and Gibson used force in a good faith effort to restore discipline and not maliciously or sadistically for the very purpose of causing harm, and that the injuries resulting from this use of force were *de minimis*.  Thus, a reasonable officer would not believe that the actions of the Defendants violated a clearly established constitutional right, and so McBain and Gibson are entitled to the defense of qualified immunity.  See Brawner v. City of Richardson, Texas, 855 F.2d 187 (5th Cir. 1988); Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

Rios filed objections to the Magistrate Judge's Report on March 31, 2005.  These objections simply listed specific objections which Rios offered, including objections to the Magistrate Judge's conclusions that: his injuries were de minimis; his actions created the need for the application of force; he posed a threat to institutional order and security; the Defendants tempered the severity of their response; there was no showing that the force used was malicious and sadistic for the very purpose of causing harm; and that the defendants were entitled to qualified immunity.  However, he did not provide any facts supporting his objections on any of these points.

Rios concedes that he had until December 15, 2004, in which to respond to the motion for summary judgment, and that he did not do so within that deadline. He says that his legal papers were confiscated and he was unable to do so, and that he filed a motion for extension of time but that this was not ruled upon. He says that he was not able to file his response to the motion for summary judgment until March 21, 2005, and so the Magistrate Judge did not have the benefit of his response when she prepared her Report.

The docket in this cause reflects that Rios filed a response to the motion for summary judgment on March 23, 2005. In the interest of justice, the Court will review this response as though incorporated in Rios' objections to the Magistrate Judge's Report.

In his response, Rios points out that the TDCJ Office of the Inspector General (OIG), formerly known as the Internal Affairs Division, concluded that Officer Gibson had used excessive force upon Rios and failed to report this use of force, in violation of TDCJ regulations. He notes that he took and passed a polygraph test, which the Defendants refused to do, and that disciplinary action was taken against both Gibson and McBain. Finally, Rios says that the medical records show that he had red areas on his neck, inside left arm, and back, and that he had slight swelling and abrasion on the lateral side of his finger approximately 1/2 inch in length.

Rios' response concedes that he refused to relinquish the handcuffs, but argues that he did not pose a threat to institutional security because he was locked in his cell with his hands restrained behind his back. He says that just because he refused to comply with orders did not give the Defendants "carte blanche" to enter his cell and "inflict their punishment."

Rios also argues that he need not show "significant and lasting injuries" and that the injuries which he did suffer are more than *de minimis*. He concludes by arguing that the Defendants are not entitled to qualified immunity.

To prevail in his lawsuit, Rios must show a violation of the Eighth Amendment to the Constitution of the United States. The fact that Gibson and McBain may have violated prison rules and regulations, and received disciplinary action for such violations, does not automatically

8

show that a constitutional violation also occurred. The Fifth Circuit has expressly held that a violation of prison rules alone is not sufficient to rise to the standards of a constitutional claim. Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986). Hence, the fact that McBain and Gibson were cited for violating prison policies is not dispositive on whether or not a constitutional violation took place.

Rios' claim that he could not have posed a threat to the security and order of the institution because he was locked in his cell likewise is without merit. The courts have held that the use of Mace on an unruly or recalcitrant inmate who was confined in his cell does not violate the Constitution. Bailey v. Turner, 736 F.2d 963 (4th Cir. 1984); Spain v. Procunier, 600 F.2d 189, 195-96 (9th Cir. 1979). In Biggers v. Renner, 37 Fed.Appx. 138 (6th Cir. 2002) (not selected for publication in the Federal Reporter), an inmate was sprayed with pepper spray after refusing orders to come out of a holding area and receive a haircut; the Sixth Circuit held that no constitutional violation had occurred.

In Soto v. Dickey, 744 F.2d 1260 (7th Cir. 1984), the Seventh Circuit upheld the use of chemical agents on inmates locked in their cells or in handcuffs, in order to gain compliance with orders. The Seventh Circuit cogently explained as follows:

> When an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force. While experts who testified on behalf of the plaintiffs, suggested that rather than seek to enforce orders, it was possible to leave the inmate alone if he chooses not to obey a particular order, and wait him out, experience and common sense establish that a prison cannot be operated in such a way.
>
> Discipline in a maximum security correctional institution no doubt is difficult, but it is essential if the prison is to function and provide for the care, safety and security of the staff and inmates. Services to provide food, clothing, health, medical, cleaning, laundry and all other services would come to end without discipline. Mob rule would take over. There would not, and could not, be any protection for staff or inmates. Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control. One can quickly reason what would happen in a maximum security prison without proper discipline.

> The evidence establishes that it is the policy and practice at WCI [the prison which was the subject of the case] for officers to enter a cell to enforce compliance with orders. Inmates are and must be required to obey orders. When an inmate refused to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.

Soto, 744 F.2d at 1267.

In the present case, Rios concedes that he refused to relinquish the handcuffs, in contravention of repeated orders to do so. He states that he also physically resisted attempts by the officers to retrieve the handcuffs. Such open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell. Rios' objection on this point is without merit.

Next, Rios asserts, in a general manner, that his injuries were not de minimis. He says that he suffered red areas on his neck, arm, and back, and slight swelling and abrasion on his finger, and claims that these injuries are more than *de minimis*.[1]

Rios cites Gomez v. Chandler as well as two other cases, Brooks v. Kyler, 204 F.3d 102 (3rd Cir. 2000) and Pryer v. Slavic, 251 F.3d 448 (3rd Cir. 2001), in support of his contention. In Gomez, as noted above, the plaintiff suffered cuts, scrapes, and contusions to the face, head, and body as a result of being knocked down, repeatedly punched in the face, and kicked in the head, which injuries necessitated medical treatment. Furthermore, Gomez alleged that he had done nothing to provoke the use of force. The injuries suffered by Gomez are not comparable to those suffered by Rios.

In Brooks v. Kyler, the Third Circuit expressly disagreed with the Fifth Circuit's reasoning in Gomez. *See* Brooks, 204 F.3d at 107. Because the district court in this case is bound

---

[1] The Fifth Circuit has held that where the objective factors of an inmate's medical records show no evidence of any injuries consistent with the inmate's allegations, the Court may conclude that the allegations are implausible. Wilburn v. Shane, et al., slip op. no. 98-21077 (5th Cir., August 20, 1999) (unpublished), *citing* Wesson v. Oglesby, 910 F.2d 278, 281-82 (5th Cir. 1990). In this case, the injuries shown in the medical record are consistent with a use of force, although not with the full quantum of force alleged by Rios.

by Fifth Circuit rather than Third Circuit authority, Rios' citations to Third Circuit cases such as Brooks and Pryer, which disagree with the analysis used by the Fifth Circuit, are unavailing.

The injuries suffered by Rios, as the Magistrate Judge correctly stated, are de minimis under the case law which she carefully set out in the Report. Rios' objection on this point is without merit.

Finally, Rios objects to the Magistrate Judge's conclusion on qualified immunity, saying that the law was clearly established that guards cannot attack a prisoner simply because of non-compliance with the guard's order, and that a reasonable guard would have known that "charging into a cell to beat, choke, and slam an inmate into the concrete floor," when that inmate was not a threat to the safety and security of the prison, would violate the Eighth Amendment.

However, Rios has failed to show that the actions of the Defendants in this case were objectively unreasonable, when faced with the circumstance of defiance which Rios himself created by his refusal to relinquish the handcuffs and his resistance of the officers' efforts to retrieve them. As stated by the Magistrate Judge, Rios' contentions do no more than raise the possibility that the officers' actions were excessive to the need, but these actions, even if excessive to the need, nonetheless were tempered enough that no more than *de minimis* injuries resulted. Rios did not require medical care as a result of the incident; the most treatment that his injuries required was simply that he wash his hands and keep them clean. His objection on this point is without merit.

The Court has conducted a careful *de novo* review of all of the pleadings in this cause, including the Plaintiff's original complaint, the motion for summary judgment filed by the Defendant, the Plaintiff's response thereto, the Report of the Magistrate Judge, the Plaintiff's objections thereto, and all pleadings, filings, and records in the cause. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Plaintiff's objections are without merit. It is accordingly

ORDERED that the Plaintiff's objections are overruled and that the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the Defendant's motion for summary judgment is hereby GRANTED and the above-styled civil action be and hereby is DISMISSED with prejudice. Finally, it is hereby

ORDERED that any and all motions which may be pending in this cause are hereby DENIED.

**SIGNED this 28th day of April, 2005.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE